LISA A. FREY (NJ State Bar #: 033731983)
lisa@mertzel-law.com
MERTZEL LAW PLLC
1204 Broadway, 4th Floor
New York, NY 10001
Tel: 646-965-6900 x 5

EHAB M. SAMUEL (CA State Bar #: 228296)
esamuel@orbitip.com
(*Admitted Pro Hac Vice*)
ORBIT IP, LLP
620 Newport Center Dr., Suite 1100
Newport Beach, CA 92660
Tel: 310-887-1333

Attorneys for Defendant,
DBEST PRODUCTS, INC.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ECR4KIDS, L.P.,<br><br>        Plaintiff,<br><br>    v.<br><br>DBEST PRODUCTS, INC.<br><br>        Defendant. | CIVIL ACTION NO. 23-2675-MCA-LDW |

## DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS AND OPPOSITION TO PLAINTIFF'S CROSS-MOTION TO TRANSFER VENUE TO THE CENTRAL DISTRICT OF CALIFORNIA

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................ 1

II.    ARGUMENT ..................................................................................................... 2

   A.  Declaratory Judgment Claims (Counts I-III) Should be Dismissed and Not Transferred Because ECR Failed to Even Respond to dbest's Arguments for Dismissal of Those Claims under Fed. R. Civ. P. 12(b)(6) ................................................................... 2

   B.  Declaratory Judgment Claims (Counts I-III) Should be Dismissed for Lack of Subject Matter Jurisdiction Because dbest's Covenant Not to Sue Extends to ECR's Customers and Distributors, and Therefore, Extinguishes any Controversy .................... 3

      1.  Because dbest's Covenant Not to Sue Authorizes Sales of ECR Products, ECR's Customers and Distributors are Protected Under the Doctrine of Patent Exhaustion ............ 3

      2.  Although Unnecessary, for Avoidance of Doubt, dbest Revised its  Covenant to Expressly Include ECR's Customers and Distributors ............................................ 6

   C.  ECR's State Law Claim (Count IV) Should be Dismissed and Not Transferred Because There is No Supplemental Jurisdiction .................................................... 7

   D.  ECR's State Law Claim (Count IV) Should be Dismissed and Not Transferred Because No Federal Court Has Original Jurisdiction Over This Claim ........................... 8

      1.  The Supreme Court's Decision in *Gunn v. Minton* Governs Whether There is Federal Subject Matter Jurisdiction for State Law Claims .................................................. 8

      2.  ECR's Tortious Interference Claim Does Not Necessarily Raise Patent Law Issues ..... 9

      3.  The Patent Issue is Not Substantial Because it is Not Important to the Federal System as a Whole ................................................................................................. 11

        a)  Resolution of the Patent Issue is Not Dispositive but is a "Case within a Case" ..... 11

        b)  A State Court's Resolution of the Patent Issue will not have Preclusive or Precedential Effect on Future Cases ..................................................................... 13

        c)  There is no Federal Interest in a Federal Court's Resolution of the Patent Issue in the State Law Interference Claim ............................................................................. 13

      4.  Federal Jurisdiction Would Disrupt the Balance Between Federal and State Responsibilities ....................................................................................................... 14

   E.  ECR's State Law Claim (Count IV) Should be Dismissed and Not Transferred Because ECR's Opposition Arguments Are Insufficient to Avoid Dismissal under Fed. R. Civ. P. 12(b)(6) ............................................................................................... 15

      1.  ECR Fails to Allege Reasonable Expectation of Economic Advantage ...................... 15

      2.  ECR Fails to Allege Facts Showing dbest's Action was Inflicted Intentionally .......... 16

      3.  ECR has Not Alleged that dbest's Purported "Interference" Caused a Loss of a Prospective Gain or Economic Benefit .................................................................... 17

4.   ECR has Not Alleged Facts That Support Damage Caused by dbest's Takedown Notice ............................................................................................................. 18

**F.   Because Counts I-IV All Lack Subject Matter Jurisdiction, The Court Has No Option to Transfer Them:  They Must be Dismissed and ECR's Motion to Transfer Must Be Denied ...................................................................................... 18**

**III.   CONCLUSION ........................................................................................... 19**

# TABLE OF AUTHORITIES

C<small>ASES</small>

*Already LLC v. Nike, Inc.*, 568 F. U.S. 85 (2013) .......................................................... 5

*Amgen Inc. v. Hospira, Inc.*, 944 F.3d 1327 (Fed. Cir. 2019) ...................................... 12

*Bradgate Assocs. v. Fellows, Read & Assocs.*, 999 F.2d 745 (3rd Cir. 1993) ......................... 7, 19

*Carson Optical, Inc. v. Prym Consumer USA, Inc.*, 11 F. Supp. 3d 317 (E.D.N.Y. 2014) .......... 11

*Conroy v. Leone*, 316 F. App'x 140 (3d Cir. 2009) .................................................. 3

*Dow Chem. Co. v. Exxon Corp.*, 139 F.3d 1470 (Fed. Cir. 1998) .............................. 10

*Exclusive Auto Collision Ctr. v. Allstate Ins. Co.*, No. BER-L-1784-20, 2022 N.J. Super. Unpub. LEXIS 48 (N.J. Super. Ct. Bergen Cnty. Jan. 12, 2022) ..................................... 18

*Ezaki Glico Kabushiki Kaisha v. Lotte Int'l Am. Corp.*, 2016 U.S. Dist. LEXIS 185577, 2016 WL 11811824 (D.N.J. Dec. 13, 2016) .................................................... 3

*Forrester Envtl. Servs. Inc. v. Wheelabrator Techs, Inc.*, 715 F.3d 1329 (Fed. Cir. 2013) ...... 9, 13

*Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005) ............... 8, 14

*Gunn v. Minton*, 568 U.S. 251 (2013) .............................................................. passim

*Hunter Douglas v. Harmonic Design*, 153 F.3d 1318 (Fed. Cir. 1998) ...................... 10

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3rd Cir. 1997)). ............... 16

*Inspired Dev. Grp. v. Inspired Prods. Grp.*, 938 F.3d 1355 (Fed. Cir 2019) ................. 13, 14, 15

*Krys v. Aaron*, 106 F. Supp. 3d 492 (D.N.J. 2015) ............................................... 7

*Lawlor v. ESPN Scouts, LLC*, 2011 U.S. Dist. LEXIS 15775, 2011 WL 675215 (D.N.J. Feb. 16, 2011) ....................................................................................... 3

*Levin v. Lilien*, No. 12-140-SDW (MCA), 2012 U.S. Dist. LEXIS 152408 (D.N.J. Sept. 14, 2012) ....................................................................................... 7

*Mattern v. City of Sea Isle*, 131 F. Supp. 3d 305 (D.N.J. 2015) ............................... 7

*Maxchief Invs. Ltd. v. Wok & Pan, Ind.*, 909 F.3d 1134 (Fed. Cir. 2018) ..................... 9

*Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891 (Fed. Cir. 1998) .............. 10

*Mikulski v. Centerior Energy Corp.*, 501 F.3d 555 (6th Cir. 2007) .......................... 12

*Moravian School Advisory Bd. v. Rawlins*, 70 F.3d 270 (3rd Cir. 1995) .................... 7, 18

*NeuroRepair, Inc. v. The Nath Law Grp.*, 781 F.3d 1340 (Fed. Cir. 2015) ................. 9, 11, 12, 14

*Pollis v. Board of Chosen Freeholders*, 2012 U.S. Dist. LEXIS 46790, 2012 WL 1118769 (D.N.J. Apr. 3, 2012) .................................................................... 3

*Printing Mart-Morristown v. Sharp Elecs. Corp.*, 116 N.J. 739 (1989) .................... 10

iv

*Quanta Computer, Inc. v. LG Electronics, Inc.*, 553 U.S. 617 (2008) .................................. 3, 4, 5

*Red Hawk Fire & Sec., LLC v. Siemens Indus.*, 449 F. Supp. 3d 449 (D.N.J. 2020) .................. 16

*Reich v. Fairleigh Dickinson Univ.*, No. 17-7608 (JMV) (JSA), 2022 U.S. Dist. LEXIS 116639 (D.N.J. 2022) ....................................................................................................................... 18

*Rios v. Friendly Hills Bank*, CV 17-04582 BRO (JPR), 2017 U.S. Dist. LEXIS 130983 (C.D. Cal. Aug. 26, 2017)............................................................................................................... 15

*SanDisk Corp. v. Mobile Media Ideas, LLC*, No. 11-cv-597, 2011 WL 1990662 (N.D. Cal. May 23, 2011)............................................................................................................................... 6

*Sanyo Elec. Co., Ltd. v. Intel Corp.*, No. 18-1709-RGA; 2019 WL 1650067 (D. Del. Apr. 17, 2019)...................................................................................................................................... 15

*Thurston v. Chino Commer. Bank, N.A.*, CV 17-01078 BRO (JCx), 2017 U.S. Dist. LEXIS 119100 (C.D. Cal. July 27, 2017)........................................................................................ 15

*TransCore, LP v. Elec. Transaction Consultants Corp.*, 563 F.3d 1271 (Fed. Cir. 2009)......... 4, 5

*Vermont v. MPHJ Tech. Investments LLC*, No. 2:13-cv-170, 2014 WL 1494009 (D. Vt. Apr. 14, 2014)...................................................................................................................................... 13

*Waldman Seafood, Inc. v. Mical Seafood, Inc.*, 2014 U.S. Dist. LEXIS 86143, 2014 WL 2887855 (D.N.J. June 24, 2014)................................................................................................. 10

*Wilco Marsh Buggies and Draglines Inc. v. Houston Heavy Machinery, LLC*, 2022 WL 4454370 (S.D. Tex. Sep. 23, 2022) .............................................................................................. 5, 6

*Zenith Elec. Corp. v. Exzec, Inc.*, 182 F.3d 1340 (Fed. Cir. 1999)............................................. 11

## Statutes

28 U.S.C. §1331 ............................................................................................................................... 8

28 U.S.C. §1338 .......................................................................................................................... 1, 8, 9

28 U.S.C. §1367 ............................................................................................................................... 7

## Rules

Fed. R. Civ. P. 12(b)(6)........................................................................................................... passim

Fed. R. Civ. P. 12(h)(3).................................................................................................... 7, 18, 19

## Treatises

Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 3567.3 (3d ed.) ...... 7

## I.      INTRODUCTION

It is unusual for a plaintiff to move to transfer its own case from the court where it chose to file.  But here, not only did plaintiff ECR4Kids, L.P. ("ECR") apparently file in this Court without considering whether this Court had *personal* jurisdiction and is a proper venue, but now it asks this Court to transfer the case to another court that also lacks *subject matter* jurisdiction.  However, there is no federal subject matter jurisdiction over any of ECR's claims; accordingly, this Court should dismiss those claims, rather than transfer them to another federal court.

Here, dbest products, Inc.'s ("dbest") covenant not to sue ECR, its customers and distributors eliminates any controversy that might have supported subject matter jurisdiction for ECR's declaratory judgment claims (Counts I-III).  ECR complains that dbest's covenant not to sue does not extinguish the controversy between the parties because it does not expressly extend to customers or distributors.  This argument lacks merit because a covenant-not-to-sue is essentially a non-exclusive license, and under the broad terms of dbest's covenant, customers and distributors are protected under patent exhaustion. To avoid any doubt, dbest has provided an updated covenant not to sue ECR, its customers and its distributors for infringement of the '835 patent. ECR proposed revisions to the updated covenant and dbest has accepted those revisions.

Additionally and independently, ECR's declaratory judgment claims (Counts I-III) must be dismissed (not transferred) for failure to state a claim.  By failing to respond to dbest's motion to dismiss the declaratory judgment claims under Rule 12(b)(6), ECR has conceded these points and abandoned these claims.

ECR's tortious interference claim (Count IV) also lacks subject matter jurisdiction. ECR only alleged supplemental jurisdiction for this Court's subject matter jurisdiction.  Because the Court lacks subject matter jurisdiction for Counts I-III, however, it should decline to exercise supplemental jurisdiction for this state law claim.  ECR now argues that the Court has subject matter jurisdiction under 28 U.S.C. §1338 because whether dbest's takedown notice was objectively baseless turns on an issue of federal patent law.  Even if ECR had alleged federal

question jurisdiction for Count IV, such an allegation could not establish federal jurisdiction as a matter of law. Only a small category of state law claims involving a federal law issue satisfy the Supreme Court's four-factor test for federal jurisdiction. This is not such a case but is merely a run-of-the-mill state law claim alleging tortious interference. There is no federal subject matter jurisdiction, so the claim should be dismissed (not transferred).

In addition to lacking a basis for federal subject matter jurisdiction, Count IV fails to plausibly allege facts supporting a claim for tortious interference. The only allegations ECR identifies as factual support for the element of malice or bad faith are conclusory allegations that rely on legal conclusions that need not be accepted as true. The failure to plausibly allege bad faith also means the claim is preempted by federal patent law. So, Count IV must be dismissed as well.

For these and other reasons set forth below, dbest respectfully requests the Court to grant dbest's motion to dismiss and deny ECR's motion to transfer.

## II.   ARGUMENT

### A.   Declaratory Judgment Claims (Counts I-III) Should be Dismissed and Not Transferred Because ECR Failed to Even Respond to dbest's Arguments for Dismissal of Those Claims under Fed. R. Civ. P. 12(b)(6)

In its opening brief in support of its motion to dismiss, dbest argued that Counts I-III for declaratory judgment fail to state claims under the federal pleading standard. Dkt. 14-1 at 12-13. Count I for judgment of noninfringement simply alleges that plaintiff's cart does not infringe any of the claims of the patent and includes no allegations providing factual support for that legal conclusion. Claim II for judgment of invalidity alleges that the patent is invalid based on the on-sale or public use bars, or for obviousness, but does not allege any facts to support these defenses. Count III for judgment of unenforceability incorporates the conclusory allegations from Counts I and II, but still pleads no facts to support the allegation that dbest sent takedown notices to Amazon knowing that ECR's carts did not infringe its patent and does not plead any factual support for its legal conclusion of patent misuse. *Id.* at 13.

In its opposition, ECR failed to address the 12(b)(6) grounds for dismissal of these claims. Where, as here, a party responds to a dispositive motion, but argues against only some grounds for dismissal ignoring others, courts deem the points not rebutted to have been conceded and the undefended claims abandoned. *See, e.g., Ezaki Glico Kabushiki Kaisha v. Lotte Int'l Am. Corp.*, No. 15-5477 (MCA), 2016 U.S. Dist. LEXIS 185577, 2016 WL 11811824 (D.N.J. Dec. 13, 2016) (finding unopposed arguments for dismissal of certain claims conceded); *Pollis v. Board of Chosen Freeholders*, No. 09-3009 (SRC), 2012 U.S. Dist. LEXIS 46790, 2012 WL 1118769, at *3 (D.N.J. Apr. 3, 2012) (finding plaintiff's failure to respond to the defendant's qualified immunity argument to be " a concession that [the] [d]efendants are correct"); *Lawlor v. ESPN Scouts, LLC*, No. 2:10-cv-05886, 2011 U.S. Dist. LEXIS 15775, 2011 WL 675215, at *2 (D.N.J. Feb. 16, 2011) (finding claim abandoned where plaintiff did not respond in any way to the defendants' argument for its dismissal) (citing *Conroy v. Leone*, 316 F. App'x 140, 144 n.5 (3d Cir. 2009) ("We find this undeveloped argument has been waived.")).

By failing to rebut dbest's arguments for dismissal of Counts I-III based on Fed. R. Civ. P. 12(b)(6), ECR abandoned them, and the Court should dismiss them.

**B.   Declaratory Judgment Claims (Counts I-III) Should be Dismissed for Lack of Subject Matter Jurisdiction Because dbest's Covenant Not to Sue Extends to ECR's Customers and Distributors, and Therefore, Extinguishes any Controversy**

**1.   Because dbest's Covenant Not to Sue Authorizes Sales of ECR Products, ECR's Customers and Distributors are Protected Under the Doctrine of Patent Exhaustion**

In *Quanta Computer, Inc. v. LG Electronics, Inc.*, 553 U.S. 617 (2008), the Supreme Court reiterated unequivocally that "[t]he longstanding doctrine of patent exhaustion provides that the initial authorized sale of a patented item terminates all patent rights to that item." *Id.* at 625. In that case, the Supreme Court found that the exhaustion doctrine applied to sales by Quanta of products combining the licensed products with other products, even where LGE's license to Intel agreement specifically disclaimed any such license:

> But the question whether third parties received implied licenses is irrelevant because *Quanta* asserts its right to practice the patents based not on implied

license but on exhaustion.  And exhaustion turns only on Intel's own license to sell products practicing the LGE patents.

*Id.* at 637.

The following year, the Federal Circuit reviewed an unconditional covenant not to sue an accused party for infringement of specified patents that, like the original covenant at issue here, did not mention whether it extended to downstream customers.  The court held that, much like a license, the covenant authorizing sales by the covenantee triggers the doctrine of patent exhaustion and extends to downstream customers. *TransCore, LP v. Elec. Transaction Consultants Corp.*, 563 F.3d 1271, 1274 (Fed. Cir. 2009) (noting that whether an agreement is framed in terms of a "covenant not to sue" or a "license" is merely form over substance because "both are properly viewed as 'authorizations.'")  In doing so, the Federal Circuit relied on the Supreme Court decision in *Quanta*, finding it irrelevant whether the covenant was intended to apply to downstream customers:

> As the Supreme Court explained in *Quanta,* however, the parties' intent with respect to downstream customers is of no moment in a patent exhaustion analysis. *See Quanta,* 128 S.Ct. at 2122 ("But the question whether third parties received implied licenses is irrelevant because [the downstream customer] asserts its right to practice the patents based not on implied license but on exhaustion. And exhaustion turns only on [licensee's] own license to sell products practicing the [licensor's] Patents.")

*Id.* at 1275. Like the settlement agreement in *TransCore*, dbest's October 20, 2023 unconditional covenant authorizes sales of ECR products:

> dbest products, Inc. unconditionally and irrevocably covenants not to sue ECR4Kids, LP, for infringement of any claim of U.S. Patent No. 11,338,835 ("the '835 Patent") based on any product that ECR4Kids is currently making, using, ***selling***, offering for sale, or importing, as of the date of this covenant, or any product that ECR4Kids made, used, ***sold***, offered for sale, or imported at any time before the date of this covenant, including but not limited to the products identified in ECR4Kids' complaint in Civil Action No. 23-2675 in the District of New Jersey, bearing Amazon ASIN Nos. B006XQ7FGM, B01MRD19DQ, and B007CDOXO2.

Dkt. 14-3 (emphasis added). Consequently, when ECR sells a specified product to any customer or distributor, that authorized sale exhausts dbest's patent rights and bars any claims against

ECR's customers or distributors. *See TransCore*, 563 F.3d at 1273 (affirming district court's holding that authorized sales had exhausted the patent rights and barred patentee from raising patent claims against customer).[1]

ECR's reliance on the Supreme Court decision in *Already LLC v. Nike, Inc.*, 568 U.S. 85, 93 (2013) is inapposite. In that case, the Supreme Court did not hold that for a covenant not to sue to extinguish downstream claims it must expressly extend to distributors and customers. Indeed, such a ruling would have required the court to reverse its holding in *Quanta*. Moreover, the holding that Nike's covenant to Already was sufficient to extinguish the controversy in that case does not mean dbest's covenant is *insufficient* to extinguish the controversy in this case. Indeed, ECR's argument is refuted by the longstanding doctrine of patent exhaustion and the Supreme Court's holding in *Quanta*.

Here, the controversy alleged by ECR is whether dbest has the "right to threaten or maintain suit for patent infringement based on the Patent and as to whether [ECR] has the right to continue to sell its carts." FAC, Dkt. 4, ¶9. Under the October 20, 2023, covenant, ECR's sales of specified carts are authorized and cannot be the basis for a suit for infringement of the '835 Patent. Those authorized sales exhaust and terminate all dbest's patent rights with respect to those cart sales. If dbest were to sue ECR's purchasers for infringement, they would have a complete defense based on patent exhaustion. Although ECR never alleged that there was a controversy about its customers' rights to resell carts they purchased from ECR, the October 20, 2023, covenant protects the customers with a complete defense, eliminating any such controversy.

---

[1] ECR's case law is distinguishable because, unlike here, the covenant in those cases did not expressly authorize sales. *Wilco Marsh Buggies and Draglines Inc. v. Houston Heavy Machinery, LLC*, No. H-21-616, 2022 WL 4454370, *2 (S.D. Tex. Sep. 23, 2022) (covenant was "for any future direct or indirect infringement of the '801 patent").

### 2.    Although Unnecessary, for Avoidance of Doubt, dbest Revised its Covenant to Expressly Include ECR's Customers and Distributors

The covenant not to sue that dbest already provided to ECR is a license authorizing ECR to sell the products-at-issue, and therefore provides protection to its downstream customers including Amazon from liability for infringement of the '835 Patent.  Nevertheless, although unnecessary, dbest would have agreed to add language to the covenant expressly covering ECR's customers, including Amazon, had ECR asked for such language.  Reply Declaration of Ehab M. Samuel in support of , dbest products, Inc.'s Motion to Dismiss and Opposition to Plaintiff's Cross-Motion to Transfer ("Samuel Reply Decl."), at ¶ 3.  In fact, dbest's counsel had invited ECR's counsel to suggest additional or different language.  Dkt. 14-3, Exhibit A.  But ECR's counsel did not respond to that invitation.  Samuel Reply Decl., ¶ 4.  Instead, ECR waited until it filed its opposition brief to complain that in its view the covenant does not extinguish the controversy between ECR and dbest. Dkt. 16-1 at 6-7.

Because ECR raised this issue, and although it is unnecessary because an authorized sale exhausts dbest's patent rights, dbest updated its covenant not to sue to expressly cover "ECR4Kids, L.P. and its distributors and customers, including but not limited to Amazon." Samuel Reply Decl., ¶¶ 6-8 and Exhibit 1 (letter). In response, ECR identified other concerns and proposed a new covenant language that is acceptable to ECR. *Id.* ¶¶ 9-10 and Exhibit 2 (response letter). dbest accepted ECR's proposed revisions to the covenant. *Id.*, ¶ 11. Consequently, this revised covenant eliminates any doubt that there is no case or controversy between the parties concerning the '835 Patent.[2]

---

[2] ECR's cases are distinguishable.  In *Wilco Marsh Buggies & Draglines Inc. v. Houston Heavy Mach., LLC,*, 2022 WL 4454370, *2 (S.D. Tex. Sept. 23, 2022), the patentee sued a customer and refused to include customers in the covenant. In *SanDisk Corp. v. Mobile Media Ideas, LLC*, No. 11-cv-597, 2011 WL 1990662, *2-3 (N.D. Cal. May 23, 2011), the patentee asserted in correspondence to defendant that its customers were infringing and offered no explanation for its reluctance to promise not to sue them. Indeed, these cases confirm that dbest's updated covenant extinguishes any controversy between the parties concerning infringement of the '835 Patent.

Federal Rule 12(h)(3) of Civil Procedure states that "[i]f the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action." The Third Circuit has held that "the plain language of Rule 12(h)(3) makes clear that, where it appears at the outset that the district court is without subject matter jurisdiction, it is powerless to do anything but dismiss the action." *Moravian School Advisory Bd. v. Rawlins*, 70 F.3d 270, 276 (3rd Cir. 1995) (district court erred by transferring cases to the Territorial Court of the Virgin Islands instead of dismissing the cases for lack of subject matter jurisdiction); *see also Bradgate Assocs. v. Fellows, Read & Assocs.*, 999 F.2d 745, 751 (3rd Cir. 1993) ("lack of subject matter jurisdiction terminates a case originally filed in federal court because Rule 12(h)(3) instructs the district courts to dismiss cases which do not meet jurisdictional prerequisites"); *Levin v. Lilien*, No. 12-140-SDW (MCA), 2012 U.S. Dist. LEXIS 152408, *8 (D.N.J. Sept. 14, 2012) (Fed. R. Civ. 12(h)(3) requires dismissal if at any time the court determines it lacks subject matter jurisdiction) (citing *Bradgate*); *Krys v. Aaron*, 106 F. Supp. 3d 492, 500 (D.N.J. 2015) (when controversy becomes moot, district court no longer has subject matter jurisdiction under "cases and controversy" required by Article III of the Constitution and becomes "powerless to do anything but dismiss" the relevant claims) (citing *Moravian*). Because Counts I-III lack subject matter jurisdiction, they must be dismissed.

## C.    ECR's State Law Claim (Count IV) Should be Dismissed and Not Transferred Because There is No Supplemental Jurisdiction

For its state law interference claim (Count IV), ECR only alleged supplemental jurisdiction for this Court's subject matter jurisdiction under 28 U.S.C. §1367. Dkt. 4 at 2, ¶4. Because ECR abandoned its federal claims under Counts I-III (*see supra* II.A) and there is no federal case or controversy (*see supra* II.A & B), the Court should decline to exercise supplemental jurisdiction over ECR's state law claim. "Where the federal claims are dismissed at an early stage in the litigation, courts generally decline to exercise supplemental jurisdiction over state claims." *Mattern v. City of Sea Isle*, 131 F. Supp. 3d 305, 320 (D.N.J. 2015); *see also* Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 3567.3 (3d ed.) ("As

a general matter, a court will decline supplemental jurisdiction if the underlying [federal question] claims are dismissed before trial").

**D.    ECR's State Law Claim (Count IV) Should be Dismissed and Not Transferred Because No Federal Court Has Original Jurisdiction Over This Claim**

       **1.    The Supreme Court's Decision in *Gunn v. Minton* Governs Whether There is Federal Subject Matter Jurisdiction for State Law Claims**

Although ECR only alleged that this Court has supplemental jurisdiction over Count IV (Dkt. 4 at 2, ¶4), it now argues that the Court has subject matter jurisdiction under 28 U.S.C. §1338 because, in ECR's view, whether dbest had a basis to allege in its takedown notice that ECR's carts infringed its patent is an issue "solely governed by federal patent law."  Dkt. 16-1 at 3-4. But this superficial observation ignores that the test for federal subject matter jurisdiction is whether the action "arises under" federal patent law.  *See* 28 U.S.C. §1331.  As the Supreme Court has explained, only a "small and special" category of state law claims raising federal issues meet the test for "arising under" jurisdiction in federal courts.  *Gunn v. Minton*, 568 U.S. 251, 258 (2013).  In *Gunn,* the Supreme Court set forth the four factors that must be satisfied for federal courts to have subject matter jurisdiction of a state law claim involving federal issues under its earlier decision in *Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005). Notably, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised; (2) actually disputed; (3) substantial; and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.* If these factors are not all present, the claim does not "arise under" federal law and a state court can apply federal law to decide the patent issue.  *Id.*

In *Gunn*, the Supreme Court evaluated whether a legal malpractice claim for handling a patent case arises under federal patent law and is thereby subject to exclusive jurisdiction of federal courts under 28 U.S.C. §1338.  *Id.* at 255-56.  The Supreme Court emphasized that "[b]ecause of the backward-looking nature of a legal malpractice claim, the question is posed in a merely hypothetical sense" and that "[n]o matter how the state courts resolve that hypothetical 'case within a case,' it will not change the real-world result of the prior federal patent litigation."

*Id.* at 261. Because the malpractice claim had no forward-looking consequences and created no real possibility of inconsistent judgments between state and federal courts, and in view of the state interest in regulating lawyers, the Court concluded that the patent law issues were not sufficiently "substantial" to create federal jurisdiction. *Id.* at 259-65.

In applying *Gunn*, the Federal Circuit has evaluated whether federal jurisdiction existed for state law claims for tortious interference with contractual relationship based on allegations that patentee made false statements about patent rights. *Forrester Envtl. Servs. Inc. v. Wheelabrator Techs, Inc.*, 715 F.3d 1329, 1331-35 (Fed. Cir. 2013). The Federal Circuit concluded that, as in *Gunn*, the alleged conflict was purely hypothetical and that there was no prospect of inconsistent judgments between state and federal courts. *Id.* As such, even though the state law claims raised a question of patent law, the patent law issues were "not substantial in the relevant sense under *Gunn*" and the "district court lacked subject-matter jurisdiction over Forrester's [state law interference] claims." *Id.* at 1336.[3]

As explained below, applying the *Gunn* factors shows that there is no federal jurisdiction for ECR's state law claim.

## 2.    ECR's Tortious Interference Claim Does Not Necessarily Raise Patent Law Issues

Because ECR's tortious interference claim is created by state, not federal, law, an issue of patent law is "necessarily raised only if it is a necessary element of one of the well-pleaded claims." *NeuroRepair, Inc. v. The Nath Law Grp.*, 781 F.3d 1340, 1344 (Fed. Cir. 2015) (internal quotations omitted) (holding that district court's exercise of federal jurisdiction was improper, and vacating and remanding to the district court with instructions to remand the case to California State Court).

---

[3] ECR's reliance on dicta from a footnote in *Maxchief Invs. Ltd. v. Wok & Pan, Ind.*, 909 F.3d 1134, 1140 n.3 (Fed. Cir. 2018) is misguided. Although quoting *Forrester*'s review of pre-*Gunn* Federal Circuit cases, *Maxchief* and ECR overlooked that *Forrester* held that a state law claim was <u>not</u> entitled to federal jurisdiction under §1338. Such dicta cannot and does not supersede the Supreme Court's controlling authority in *Gunn*.  Moreover, *Maxchief* did not find there was federal question jurisdiction; it left the question for another day.

To establish a tortious interference with business relations claim, a plaintiff must allege that: (1) it had some "reasonable expectation of economic advantage;" (2) the defendant's actions were malicious such that the harm was inflicted intentionally and without justification or excuse;" (3) the interference "caused the loss of the prospective gain or there was a reasonable probability that the plaintiff would have obtained the anticipated economic benefit"; and (4) "the injury caused the plaintiff damage." *Waldman Seafood, Inc. v. Mical Seafood, Inc.*, 2014 U.S. Dist. LEXIS 86143, 2014 WL 2887855, at *7 (D.N.J. June 24, 2014) (Wigenton, J.) (citing *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 116 N.J. 739,  751-52, 563 A.2d 31 (1989)). None of these elements requires resolution of patent law.

ECR asserts that this Court has subject matter jurisdiction because the "crux" of its state law claim depends on whether dbest's accusation of infringement was " 'objectively baseless,' an issue solely governed by U.S. patent law." Dkt. 16-1 at 3 (citing *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 898 (Fed. Cir. 1998) for the proposition that federal patent law requires a showing of bad faith). But ECR's reliance on *Mikohn* is misplaced for two reasons.

First, *Mikohn* did not involve a motion to dismiss; the Federal Circuit there merely applied the well-established principle that unless there is a showing of bad faith, federal law preempts or bars an interference state law claim. *Id.* (vacating preliminary injunction where record contained no more than a "negligible likelihood of success in showing bad faith.") Importantly, *Mikohn* did not alter the well-established rule that federal law does not preempt state law claims based on an additional element (*i.e.*, bad faith), not shared by the federal law, which makes it qualitatively different from the federal claim. *See Dow Chem. Co. v. Exxon Corp.*, 139 F.3d 1470, 1473 (Fed. Cir. 1998) (unfair competition claim involving allegation of bad faith not preempted); *see also Hunter Douglas v. Harmonic Design*, 153 F.3d 1318, 1337 (Fed. Cir. 1998) (state law torts alleging bad faith not preempted). As such, a determination of whether dbest's conduct was allegedly objectively baseless or made in bad faith is *not* "an issue

- 10 -

solely governed by U.S patent law"; rather, it is an additional element that ECR needs to allege and prove for its state law claim to avoid federal preemption. Consequently, it is bad faith, not application of patent law, that is a necessary element for ECR's state law claim.  And, as *Dow Chem.* observed, even if there are patent questions at issue, a state court has authority to adjudicate such ancillary issues in reaching its judgment on an underlying tort claim. 139 F.3d at 1475-76 (collecting cases).

Second, ECR's First Amended Complaint (Dkt. 4) does not even allege bad faith. As such, ECR's state law interference claim is preempted. *See Zenith Elec. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1355 (Fed. Cir. 1999) (holding that "bad faith is a prerequisite to [a] state-law tortious interference claim; without it, the claim is preempted by patent law."); *Carson Optical, Inc. v. Prym Consumer USA, Inc.*, 11 F. Supp. 3d 317, 329 (E.D.N.Y. 2014) (holding unfair competition and tortious interference claims preempted by federal patent law "due to the absence of allegations of additional tortious conduct that is separate from the patent law cause of action.")

### 3.      The Patent Issue is Not Substantial Because it is Not Important to the Federal System as a Whole

Assuming for the sake of argument that ECR's state law claim would require it to prove its products do not infringe the '835 Patent, resolution of that issue is <u>not</u> "substantial," as required by *Gunn*, to invoke federal jurisdiction. *See Gunn*, 568 U.S. at 258. ECR's interference state law claim is akin to the malpractice state law claim in *Gunn*. Such claim is "not substantial in the relevant sense."  568 U.S. at 260.

To determine whether the federal issue is "substantial," courts consider whether: (i) a pure issue of federal law is dispositive of the case; (ii) the courts resolution of the issue will control numerous other cases; and (iii) the federal government has a direct interest in the availability of a federal forum.  *NeuroRepair*, 781 F.3d at 1345.

#### a)      Resolution of the Patent Issue is Not Dispositive but is a "Case within a Case"

Resolution of ECR's state law claim depends on the facts and circumstances of this case—not interpretation of patent law. *See NeuroRepair*, 781 F.3d at 1346 ("Both claim scope

and timing of issuance are likely to depend primarily on the particular facts and circumstances of the prior art, timely responses to office actions, etc., rather than on the interpretation of federal law.") Even assuming that ECR products were found not to infringe, and/or the '835 Patent is invalid or unenforceable, as ECR alleged, those findings would not be case-dispositive: ECR must establish that dbest's actions were malicious, meaning that the harm was inflicted intentionally and without justification or excuse. *See, e.g., Gunn*, 568 U.S. at 260 (concluding the patent issue was not substantial in the relevant sense).

Similarly, while a finding that ECR infringed the '835 Patent would be dispositive to disprove ECR's right to relief, that fact alone would not render the patent law issue substantial. *See Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 571 (6th Cir. 2007) (no federal jurisdiction where resolution of federal issue "may, but will not necessarily, conclude the action" because if the court resolves the federal issue in the plaintiffs' favor, "then the plaintiffs must still prove the remaining elements" of their state law claims, but if it resolves the federal dispute in defendant's favor, "then the plaintiffs cannot prevail"). "The substantiality inquiry looks to the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 252.

Like *Gunn*, ECR's state law claim is backward-looking based on past conduct, and as such, merely creates a classic hypothetical "case within a case." *See* 568 U.S. at 261. The federal patent issue involved here—infringement and invalidity—requires application of established Supreme Court and Federal Circuit law to the facts, rather than a resolution of pure legal issues of patent law. *See Amgen Inc. v. Hospira, Inc.*, 944 F.3d 1327, 1335 (Fed. Cir. 2019) ("infringement is a question of fact…"); *NeuroRepair*, 781 F.3d at 1346 (finding no original jurisdiction where resolution of the claims was "likely to depend primarily on the particular facts and circumstances . . . rather than on the interpretation of federal law."); *Vermont v. MPHJ Tech. Investments LLC*, No. 2:13-cv-170, 2014 WL 1494009, at *9 (D. Vt. Apr. 14, 2014) (the issues in the case, "namely, the evidence necessary to threaten patent litigation—involve the application of existing patent law to the facts of this case, and require no determination of patent law that

would have implications reaching beyond the parties to this proceeding."). Consequently,

"'[s]uch fact-bound and situation-specific effects' are not sufficient to establish federal arising

under jurisdiction." *Gunn*, 568 U.S. at 263.

> ### b)  A State Court's Resolution of the Patent Issue will not have Preclusive or Precedential Effect on Future Cases

If ECR's state law claim is decided by a state court, there is no possibility of

contradictory findings between the state court and federal courts or of the state court's decision

controlling numerous other cases.  As the Supreme Court has observed, resolution of the patent

issues by the state court would not establish any federal patent law precedent. *See Gunn*, 568

U.S. at 262 ("the federal courts are of course not bound by state court case-within-a-case patent

rulings"). Similarly, in *Forrester*, the Federal Circuit rejected the argument that state court's

resolution of claim construction issues raised by the business tort claim would have "potential

preclusive effects in any future litigation involving the patents-in-issue," observing that the

Supreme Court rejected a related argument in *Gunn*. 715 F.3d at 1335.

Here, a state court action would not affect the scope of the '835 Patent, much less require

resolution of a novel issue of patent law, because the state court would only need to determine

whether dbest knew when it sent the takedown notice that ECR's products did not infringe a

valid patent and whether dbest's conduct was malicious.  There is simply no risk that a state

court ruling could set patent law precedent that would affect future cases involving the '835

Patent. Accordingly, any determination by a state court with respect to ECR's state law claim

would not impact future cases.

> ### c)  There is no Federal Interest in a Federal Court's Resolution of the Patent Issue in the State Law Interference Claim

Resolving a typical patent infringement dispute does not involve a federal government

interest. *See Inspired Dev. Grp. v. Inspired Prods. Grp.*, 938 F.3d 1355, 1368-69 (Fed. Cir 2019)

(given the "fact bound" nature of the embedded patent issues, the government's interest in

having any single patent infringement case heard in a federal forum is "limited."); *see also*

*NeuroRepair*, 781 F.3d at 1357 (distinguishing *Grable* where resolution of the dispute required a

determination that would directly impact IRS practices). Similarly, a state court determining whether dbest had a reasonable belief that ECR's products infringed the '835 Patent, or even whether those products actually infringe it, would not impact any federal agency, even the PTO. Nor would such a determination affect the consistent application of federal law.  *See Gunn*, 568 U.S. at 262 (state courts can be expected to follow relevant federal precedents); *see also NeuroRepair*, 781 F.3d at 1347 (rejecting vague assertions that state courts resolving federal law issues would lead to inconsistency).

Even if ECR's state law claim required resolving novel issues of patent law, which it does not, "*Gunn* casts doubt on the idea that this would often rise to the level of a 'substantial' federal issue." *Inspired Dev.*, 938 F.3d at 1366.  The Supreme Court reasoned in *Gunn* that "[a]s for more novel questions of patent law that may arise for the first time in a state court 'case within a case,' they will at some point be decided by a federal court in the context of an actual patent case, with review in the Federal Circuit."  568 U.S. at 262.  "If the question arises frequently" the opinion continues, "it will soon be resolved within the federal system, laying to rest any contrary state court precedent; if it does not arise frequently, it is unlikely to implicate substantial federal interests.  *Id.* In sum, the federal government simply has no interest in resolving the patent issues embedded in ECR's state law claim in a federal court.

### 4.  Federal Jurisdiction Would Disrupt the Balance Between Federal and State Responsibilities

The final factor "is concerned with the appropriate 'balance of federal and state judicial responsibilities.'" *Gunn*, 568 U.S. at 264. Requiring a federal court to resolve ECR's state law interference claim merely because there is a patent law issue embedded within it would disrupt the federal-state balance, violating *Gunn*'s fourth factor.  The embedded patent issues are run-of-the-mill, so finding a federal question in a state law case "would undoubtedly impact the wider balance between state and federal courts."  *Inspired Dev.*, 938 F.3d  at 1369. Indeed, such a rule "would sweep a number of state law claims into federal court." *Id.* In such instance, essentially any state law claim involving any patent-related issue would support federal jurisdiction. But that

is not the rule. *Gunn* emphasized that "arising under" jurisdiction is limited to cases created by federal statutes or a "special and small category" of cases where, unlike here, federal jurisdiction lies because all four *Gunn* factors are present. 568 U.S. at 268.

Here, a state court's interest in adjudicating the state law tortious interference claim outweighs any federal interest in adjudicating the patent issues embedded in that claim, so federal adjudication of the tortious interference claim would disrupt the balance between the federal and state judiciaries. *See Thurston v. Chino Commer. Bank, N.A.*, CV 17-01078 BRO (JCx), 2017 U.S. Dist. LEXIS 119100, at *14 (C.D. Cal. July 27, 2017) (where claim was brought under Unruh Civil Rights Act and a federal ADA issue was likely not necessary to the claim or substantial, federal adjudication would disrupt the federal/state balance); *Rios v. Friendly Hills Bank*, CV 17-04582 BRO (JPR), 2017 U.S. Dist. LEXIS 130983, at *14 (C.D. Cal. Aug. 26, 2017) (same); *Sanyo Elec. Co., Ltd. v. Intel Corp.*, No. 18-1709-RGA; 2019 WL 1650067, at *9 (D. Del. Apr. 17, 2019) (federal interests in state law claims do not outweigh the state's interest in regulating commerce in the state).

Thus, the fourth *Gunn* factor weighs against finding federal jurisdiction for ECR's state law claim.

### E. ECR's State Law Claim (Count IV) Should be Dismissed and Not Transferred Because ECR's Opposition Arguments Are Insufficient to Avoid Dismissal under Fed. R. Civ. P. 12(b)(6)

#### 1. ECR Fails to Allege Reasonable Expectation of Economic Advantage

ECR argues that it has alleged that it had an agreement and a reasonable expectation of economic advantage "because ECR was selling the rolling carts at issue to Amazon.com." Dkt. 16-1 (citing FAC ¶¶ 5, 9, 17, and 23).  But none of the cited paragraphs in the FAC alleges that the plaintiff sells carts to Amazon much less that there was an agreement.  Paragraphs 5, 17, and 23 allege that ECR sells its carts on Amazon, meaning they are offered for sale on Amazon's website platform where Amazon's users can buy them from ECR.  Paragraph 9 does not even mention Amazon.  Perhaps recognizing this, ECR submits a declaration from its general counsel, Jeffrey Lynn, who testifies that ECR is a vendor as well as a seller and attaches Amazon's

vendor agreement, which does not mention ECR. Dkt. 16-3 and Exhibit A.  But courts generally do not consider material extraneous to the pleadings in resolving a motion to dismiss except those documents "integral to or explicitly relied upon in the complaint." *See, e.g., Red Hawk Fire & Sec., LLC v. Siemens Indus.*, 449 F. Supp. 3d 449, 459 (D.N.J. 2020) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3rd Cir. 1997)).  Therefore, Mr. Lynn's declaration and Amazon's general vendor agreement should not be considered in deciding this motion.  The FAC does not allege a reasonable expectation of economic advantage and Count IV can be dismissed on this ground alone.

### 2.    ECR Fails to Allege Facts Showing dbest's Action was Inflicted Intentionally

ECR failed to allege any facts that support the malice element of tortious interference. In its opposition, ECR cites paragraphs 8, 16, and 20 as purportedly supporting the malice element. But paragraph 8 simply alleges: "Plaintiff's cart does not infringe any of the claims of the [p]atent;" it does not directly support malice.  Paragraph 16 alleges: "The [p]atent is unenforceable for misuse in that Defendant has asserted its [p]atent against Plaintiff and others knowing that the [p]atent has not been infringed and/or is invalid."  And paragraph 20 states: "Defendant knew when it sent its takedown notices to Amazon that Plaintiff's and other competitors' carts did not and do not infringe the [p]atent and/or that the [p]atent was invalid." All three of these allegations are conclusory and there are no supporting factual allegations anywhere else in the Complaint either.  Therefore, the FAC does not sufficiently allege actual malice.

In its opening brief, dbest argued that none of the declaratory judgment counts stated claims because they alleged legal conclusions but did not allege supporting facts.  Dkt. 14-1 at 12.  In particular, Count III, which contains the allegation that dbest "asserted its [p]atent against Plaintiff and others knowing that the patent has not been infringed and/or is invalid," fails to provide any factual basis to allege that acted in bad faith, knowing the patent was not infringed

or invalid.  *Id.*  These arguments invited ECR to defend its claims by explaining why they contained factual allegations to support them, if that were possible.  But ECR did not defend the claims and allegations of Counts I-III by responding to dbest's 12(b)(6) arguments at all, and therefore has conceded them.  Count IV for interference is the only claim ECR has even tried to defend.  And even in its Count IV argument, ECR does not (and cannot) point to any factual support for its conclusory allegation that "dbest knew when it sent the takedown notice to Amazon.com that the ECR products did not infringe the claims." But having chosen to incorporate its allegations of noninfringement, invalidity, and unenforceability into Count IV by reference, ECR is stuck with the pleading deficiencies of those allegations when it relies on them to show elements of tortious interference, especially malice in the form of bad faith.  ECR has failed to plead the second element of tortious interference.

> **3.      ECR has Not Alleged that dbest's Purported "Interference" Caused a Loss of a Prospective Gain or Economic Benefit**

ECR argues that it alleged that "dbest's actions caused Amazon.com to stop selling ECR's product and because ECR supplies that product to Amazon.com, Amazon.com stopped buying the product from ECR."  Dkt. 16-1 at 14 (citing FAC, ¶¶ 19 & 24).  But as discussed above, the complaint does not allege that Amazon has any agreement to "buy the product from ECR."  Paragraph 19 alleges that Amazon's compliance with dbest's takedown notice prevented "[ECR] and others from offering their carts for sale on Amazon."  But ECR has not pleaded that it had any expectation that Amazon's customers would keep buying its carts if they continued to be sold on Amazon, or that customers could not buy its carts at other websites or from retailers, in which case, ECR would still earn profits from those sales.  Paragraph 24 alleges that as a result of dbest's takedown notices to Amazon, ECR has lost sales and "incurred other substantial damages"—not described.  Like most of ECR's allegations, these merely recite the elements of the claim and are completely conclusory.  In sum, ECR has not sufficiently pleaded causation, the third element of tortious interference.

### 4.   ECR has Not Alleged Facts That Support Damage Caused by dbest's Takedown Notice

As noted above, ECR alleges that it has lost sales and incurred "other substantial damages" but has not alleged any supporting facts other than that Amazon complied with dbest's takedown request and removed its carts from Amazon's website.  No facts whatsoever are alleged to support the "other substantial damages."  This is insufficient to plead the damages element of tortious interference.  "Tortious interference cannot proceed on a theory of presumed damages." *Exclusive Auto Collision Ctr. v. Allstate Ins. Co.*, No. BER-L-1784-20, 2022 N.J. Super. Unpub. LEXIS 48, at *16 (N.J. Super. Ct. Bergen Cnty. Jan. 12, 2022).  Because ECR has failed to plead facts supporting damages, it has failed to state a claim for tortious interference under New Jersey law.  *See Reich v. Fairleigh Dickinson Univ.*, No. 17-7608 (JMV) (JSA), 2022 U.S. Dist. LEXIS 116639, *23-24 (D.N.J. 2022) (denying motion to supplement answer to assert a tortious interference counterclaim that failed to sufficiently allege damages).

Because ECR has failed to sufficiently allege any of the elements of tortious interference, Count IV should be dismissed.  Further, because ECR has not asked for leave to amend if its claims are dismissed, the dismissal should be with prejudice.

### F.   Because Counts I-IV All Lack Subject Matter Jurisdiction, The Court Has No Option to Transfer Them:  They Must be Dismissed and ECR's Motion to Transfer Must Be Denied

ECR contends that jurisdiction is "unquestionably proper in the Central District of California." Dkt. 16-1 at 9. ECR is wrong. As explained above, there is no subject matter jurisdiction for Counts I-IV. Consequently, they must be dismissed, not transferred to the Central District of California or any other federal district court. *See* Fed. R. Civ. P. 12(h)(3) ("[i]f the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action."); *Moravian*, 70 F.3d at 276 (The "plain language of Rule 12(h)(3) makes clear that, where it appears at the outset that the district court is without subject matter jurisdiction, it is powerless to do anything but dismiss the action."); *see also Bradgate*, 999 F.2d at 751 ("lack of subject matter jurisdiction terminates a case originally filed in federal court because Rule

- 18 -

12(h)(3) instructs the district courts to dismiss cases which do not meet jurisdictional prerequisites").

## III.   CONCLUSION

For the foregoing reasons, dbest respectfully requests that the Court (i) dismiss the FAC for failure to state a claim, lack of subject matter jurisdiction and lack of personal jurisdiction; and (ii) deny ECR's  motion to transfer the action to the Central District of California.

Dated: December 11, 2023                     Respectfully submitted,

*/s/ Lisa A. Frey*
Lisa A. Frey

*Attorneys for dbest products, Inc.*